Please the court. Mr. Wren, my name is Luther Souter. I'm from Little Rock, Arkansas. I'm up here on on two cases this morning and I'm proud to represent two police, former police officers that were run out of the business of protecting the public by a corrupt police officer that they witnessed use excessive force on an American citizen in November of 2019. After they reported this in November of 2019, both of them, both of these police officers found themselves under criminal investigations based upon, it is undisputed in this record, and the district court below, despite my filing a motion to alter them in, refused to consider how important it was that Jordan Talley, the prosecutor, in both of these cases testified unequivocally, no statement from Kobe Heard, no prosecution. Now, I'm here on this particular case to argue two issues in my 15 minutes. The first issue is whether or not Mr. Brown was seized, and as the court knows, the law surrounding the Fourth Amendment has been evolving quite rapidly at the Supreme Court over the last few years. Well, has it evolved to such an extent that we have a clear precedent indicating that receiving a court process is a seizure? Well, great question. I don't think, obviously that question is directed at the qualified immunity analysis, and I think the qualified immunity analysis goes too far when you require a plaintiff to prove that fabricating, I mean, it was clear, Frank's clearly established that a police officer can't lie in an affidavit or can't lie to institute a criminal proceeding. That was clearly established. Whether or not the Fourth Amendment requires a seizure, I believe was addressed by the United States Supreme Court in that trio of cases that I addressed on pages 33 and 34 of my brief. So one of those cases is Justice of Boston Municipal Court v. Lyden. So Judge Smith, I think that when we look at what the qualified immunity analysis, as you recognized just recently in a similar case, I don't have to prove that the exact conduct would lead to a constitutional violation. I have to that the law was of such a nature that a reasonable officer would know that his conduct was illegal. You have to bring the issues that are being discussed within the framework of the Fourth Amendment. That's your theory, correct? Yes. And that's what I'm asking about is what assurance can you give us from the law that a Fourth Amendment seizure has been affected and that the theory you're using is one that we can manage under existing precedent? Yes, sir. My first argument is I don't think I have to go that far, but even if I did, a traffic stop, for example, is a seizure. Just a traffic stop. And how you differentiate between a traffic stop and a criminal summons, a criminal summons is much more invasive than a traffic stop. Well, I guess what I'm getting at is you're asking us to go into and conclude something that hasn't been done by a prior court. Not exactly, but you held just recently that I don't have to. I don't have to prove a clone. I have to prove that the law was sufficiently and clearly established that a reasonable officer would know his conduct was illegal. And, Judge, it's been the law for decades that an officer can't lie. And it's been the law for decades from the Supreme Court that a traffic stop is a seizure. And I don't think the qualified immunity analysis... We don't have a traffic stop in this case. No, but the point is the traffic stop is far less invasive than a criminal summons. Nobody goes to jail over a traffic stop. Nobody has to appear multiple times for omnibus hearings. Nobody has to restrict their liberty to leave the state. Judge, if a traffic stop is a seizure, there is no logical reason that a criminal summons shouldn't either. And it's time, after 30 years of practicing civil rights law, explaining qualified immunity, which, by the way, I have raised the issue that qualified immunity is judicial activism at its very best. And I'm hoping... Well, I've got to be honest. We see that from time to time, but you're aware we're bound by that, by our case law. So, I mean... Well, well... I understand you've been doing it for 30 years, you and others, and nothing's moved. So this may not be the case for that. Well, it may or may not be. I filed seven... You understand we can't do that? Yes, absolutely. I filed seven petitions for cert with the U.S. Supreme Court, and three have been granted. And I'm going to try to improve my percentage to four out of eight on this case because qualified immunity is an abomination. I know y'all can't can't overrule it, but I at least have to raise it here to preserve my record. And that's why I'm doing it. I'm well aware... Well, I mean, qualified immunity... Didn't the district court... really didn't talk in terms of qualified immunity. It talked in terms of whether these claims were made out, whether there's... Whether there's proof that you could present and that you did show the district court that would make out a cause of action. Yes, sir, you're exactly right. But as you know, you can affirm on any basis supported by the record, and I was answering Judge... I wonder why the district court didn't talk and didn't even, as I read it, didn't even use the term qualified immunity. He did not. Is that just the way it was argued, that it was not argued in terms of qualified immunity, but simply... I think Mr. Wren argued it sufficiently to preserve the issue. Well, what I'll get to my real question is what are the claims that are actually and were actually before the district court? Because you've got these supplemental complaint, I think an amended supplemental complaint. What's the operative... complaint that we can go to and see what claims were before the district court? Both the original complaint and what I termed the supplemental complaint. Because under Rule 15, people very rarely understand the difference between an amended complaint and a supplemental complaint. A supplemental complaint is something that occurs... that becomes... accrues after the action is filed, and it doesn't necessarily take the place of the original complaint. That's the difference between an amended complaint and a supplemental complaint. So I think all the claims that I had, and he addressed all the claims, but you are correct. He did not talk in terms of qualified immunity. He ruled... So what came about after the original complaint was filed? My client was... the charges were Nalprost. And in order... in order to bring a Fourth Amendment claim for malicious prosecution and a common law claim for malicious prosecution, and by the way, he shouldn't... you know, this issue of law is unsettled in Arkansas, and he should not have used his discretion to determine a question of unsettled law. We've got a case called Guidry that I've cited to you that says arguable probable cause is not a defense to common law malicious prosecution in Arkansas. Our Arkansas Supreme Court has not ruled on that quite yet, but I'm asking... even if you affirm on the federal claims, I'm asking you to reverse and let me go back to state court so I can continue trying to develop this law for the state... for the citizens of Arkansas. But in all fairness to the district court, he did not have some of the recent Supreme Court precedent that... where probable cause doesn't necessarily vitiate a First Amendment claim for termination. That was that Gonzalez case that came out the end of June. My reply brief was due in August, and I'm asking you to... if you get that far, if you find that there was a seizure, because a criminal summons is at least a restriction on liberty as a traffic stop, and if you get that far, I'm going to... I'm asking you to remand so that I can... in light of Gonzalez, so that I can attempt to make out the Neves exception. Didn't the district court actually view that the supplemental complaint... the court said it's the operative complaint, so didn't it view the supplemental complaint as actually an amended complaint? That's the complaint that we need to look at to see what claims are brought. That's how it treated it, and I'm saying... And nobody is arguing or taking issue with that in this appeal as I see it. That's right. I mean nobody... we want... and he went on in the summary judgment order to address the other claims in the original complaint. He said even if they were properly before the court, summary judgment would be granted. And so we all favor a determination on the merits. We want peace. We want resolution of our issues. Well, the court... now the court said had these claims been asserted in Mr. Brown's most recent complaint, summary judgment would be granted if the claims had been asserted. But as I read it, the court's saying they're not asserted. Well, and I disagree because... Belt and suspenders, I guess, approach here. I understand. By extension, I would argue to you that the district court erred when it treated the supplemental complaint as an amended complaint. But again, that issue... No one's briefed that. That's right. And so all of these claims are properly before you. Counselor, you're well within your rebuttal time. You can continue if you like. No, sir. Thank you. Mr. Wren. Good morning. May it please the court. My name is Keith Wren. I represent the city of Dermot, Kobe Heard, and Eric Evans in this matter. The top five reasons to affirm the district court are number one, that there was no adverse employment action against the plaintiff. Number two, the plaintiff never engaged in any protected speech or whistleblowing. Number three, assuming that he did, his comparators were not fired. Number four, plaintiff was not seized within the meaning of the Fourth Amendment. And number five, there was probable cause for the charges that were brought against him. Well, would you address the seizure since we spent a lot of our time with it? Are we looking at this in the context of qualified immunity or is this simply a whether or not there was a constitutional claim pled here? How should we look at this in your view? There is no qualified immunity issue in this case. The district court didn't address it in its order. It found that there were no constitutional violations. So I don't think that qualified immunity is really an issue. So is there a case we should look to on whether or not the criminal summons is a seizure for Fourth Amendment purposes? Where do I start with that? There are a number of cases on that. There was a case cited in the brief. It's the Martinez case. And I cited that one because it was a nice case to cite because it had a collection of other opinions from other circuits. Was that the Judge Gorsuch opinion? I'm sorry. Was that Judge Gorsuch? Oh, I don't know the answer to that, Your Honor. But essentially, that whole issue can be wrapped up in one statement. I'm sorry, I can't remember which case it was, but I know it's cited in the brief that the Fourth Amendment is designed, intended to protect citizens from unreasonable searches and seizures. It is not for the purpose of some sort of right not to have a prosecution brought. And so I think that that is really the fundamental issue. In this case, a prosecution was brought by the prosecutor and the plaintiff was not seized. He was sent a summons and he was told that he had to be a participant in the prosecutorial process, but never was he seized. And so I think that that's the fundamental issue, whether a summons can be considered a seizure. And I think that all of the case, all of the courts that have addressed it have said that... I think Mr. Souter acknowledges that he's looking to establish new precedent on that subject. Right. And again, I would just simply stand on the statement that that was not the intention of the Fourth Amendment, that it was not designed to assure that citizens could not be brought into the criminal prosecution process, but that it does prevent police officers from grabbing people off the street, unreasonably searching their homes, their papers, and things of that nature. And I think that that was what is the intention of the Fourth Amendment in all of the cases that have interpreted it agree with that statement. With regard to the issue of no adverse employment action, I think that this case is a little bit unique. And the district court got it right in that normally when I defend these cases and employees are told, well, you can resign or be fired, I don't address that issue. Because the answer is they're not walking out with their job. So I just say, well, it's a termination. Right. There's no point in me arguing that it's anything other than that. This one's a little bit different. This one, I think the plaintiff admitted that the police chief could not fire him. He was never told by the police chief that he was fired. He was told by his brother, Sergeant Edward Brown, who is the plaintiff in the next case up for argument, that he was going to be fired for no call, no show. His brother had no authority to fire him. So when he went to the mayor, he talked to the mayor about it. And the mayor said that the chief couldn't fire him and he didn't have the authority and that the mayor didn't want to fire him. At this particular time that this conversation was taking place, the plaintiff had already accepted another job at another police department. This was somewhere around January the 31st of 2020. On February the 4th of 2020, the police chief of the department where he had gotten the new job found out that the plaintiff was under a criminal investigation and told the plaintiff that he was not going to follow through with the job offer. In spite of that, the next day on February the 5th, 2020, the plaintiff submitted a letter of resignation to the Dermott Police Department. And so under these unusual circumstances, I think that the district court was correct in finding that he was not fired. And so that, in and of itself, I think ends any sort of employment that the plaintiff had. Also, there's no evidence that the plaintiff engaged in any protected conduct. And even if he did, his comparators, another police officer who reported to the police chief that another police officer may have engaged in excessive force, that officer is still with the ruling on the summary judgment. He was still with the department. He was never fired. And so for the plaintiff to say that if he was terminated, it was because of the reporting of excessive force, there is no comparator for that. Or rather, the comparator was not terminated. Finally, with regard to the charges themselves, there was clearly probable cause for the charges that were brought. There was a written statement from the victim who said that the plaintiff had stolen money from him. That was given to the police chief and Officer Coby Hurd. Based on that, the chief turned the matter over for investigation to the Arkansas State Police who contacted the same victim who repeated to the state police investigator that indeed the plaintiff had stolen money from him. The prosecutor also had a conversation with that victim who also repeated to him that the plaintiff had stolen money from him. And it was on that basis that the charges were brought. And these charges were only in all process after the prosecutor could not find the victim anymore, that he attempted to locate him, send him a subpoena for trial, and he was unable to do so. And so on that basis, the charges were in all process. But to say that there was no probable cause or that the only probable reason that there was a prosecution was because of the statements of Officer Hurd are simply not supported by the record. And I stand for questions. I don't see any. Thank you. Thanks, Mr. Wren. Mr. Souter, your rebuttal. Look, summary judgment has evolved over the 30 years I've been practicing, but we've got to give meaning to those words. All reasonable inferences must be drawn in my client's favor as a non-moving party. And what you just heard was an argument that draws inferences in his favor. Once again, look at the record. No statement. Give us the counterpoint. Tell us. No statement from Hurd. No prosecution. Money was seized. There's no dispute about that. But Hurd alleges that it was stolen at the police station and that my client attempted to bribe him. The district court's finding that Britt's statement provided probable cause doesn't. Even the prosecutor, even the Arkansas State Police said there was no probable cause, even with Hurd's statement. But the prosecutor, Jordan Tilley, testified explicitly that no statement from Hurd, neither one of these Brown brothers get charged. Neither one. And are we to believe that they just, is it reasonable to believe that two police officers become crooked after decades of service within 60 days after reporting another officer for excessive force? No. A reasonable jury could find that this was retaliatory. And so I can't tell you how much I object to the idea that Britt's statement provided probable cause. Yes, all he saw was his money was seized. Then the allegation is, is my client took the money back to the police station and offered to bribe Hurd and then took the money. The money came up missing. Well, Hurd had access to it too. The record reflects the evidence room was completely unsecured. And so, Judge, I beg you, look at Judge Prosecutor Tilley's statements, deposition that's in the record. Now, with respect to the no adverse job action, Rosano be fired, I think I've chinned that line. This is a case that the two adverse job actions were the Rosano be fired and the disclosure of this investigation, this retaliatory investigation to the Lake Village Police Department, which my client had already got a job. But at the very end of the day, I urge you to at least reverse the remand with instructions to dismiss the state claims without prejudice. There are unsettled questions of state law that the state courts should resolve. And I thank you for your time. Thank you, Mr. Souter. Thank you also, Mr. Wren. We'll continue with case number two involving the same attorneys. So if you would, Mr. Souter, start your second case. One time I had four cases.